**NOT FOR PUBLICATION**                                                          **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BYRON HOLMES, | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | Civil Case No. 09-5342 (FSH) (PS) |
| v. | **OPINION & ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | Date: March 14, 2012 |
| Defendant. | |

**HOCHBERG, District Judge;**

      This matter comes before the Court upon Plaintiff Byron Holmes's motion to review a final determination of the Commissioner of Social Security ("Commissioner"), pursuant to Section 205(g) of the Social Security Act, as amended ("Act"), 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I.  FACTUAL BACKGROUND**

      Plaintiff Byron Holmes was born on April 8, 1968. Plaintiff has a high school education and a very brief work history as a "laborer," "warehouse person," and later as an associate minister. Tr. 32. Plaintiff has always had poor vision, filing for Supplemental Security Income ("SSI") benefits on March 6, 1998, alleging an onset date of disability (legal blindness) of January 1, 1997. Tr. 31-32. Although denied initially, after a hearing on October 26, 1999 before Administrative Law Judge ("ALJ") Robert J. Lazarus, Plaintiff was determined to be disabled due to poor vision. Tr. 34. The onset date of this disability was determined to be the date of Plaintiff's SSI application: March 6, 1998. Tr. 32.

Three years later, in March 2001, Plaintiff's father, David Holmes, died while collecting Disability Insurance Benefits under Title II of the Social Security Act. The Social Security Act provides that an individual is entitled to adult child benefits ("ACB") if he or she is the child of an insured person who has died, retired, or become disabled, is dependent on the insured, and is under a disability which was continuous and began before he or she attained the age of 22. 42 U.S.C. § 402(d)(1); 20 CFR § 404.350(a)). This is considered a "child's benefit" because it is paid on the parent's Social Security earnings record. To be eligible, the claimant must be over 18 years old and have proof of a disability that began before the age of 22. 20 CFR § 404.350(a)(5). The claimant must also be dependent on the deceased. 20 CFR § 404.350(a)(2). On November 4, 2003, almost two years after his father's death, Plaintiff applied for ACB, alleging that he has been disabled since April 6, 1990, two days before his 22nd birthday. Tr. 12.

After a series of unfortunate procedural errors, including unsigned and undated correspondence, Tr. 39-42, being sent to an outdated address and Plaintiff mistakenly being sent a letter which indicated (incorrectly) that he did not qualify for benefits "because the facts we have do now show that you are David Holmes' child," *id*. at 71, a hearing was held on March 23, 2009 before ALJ Dennis O'Leary. Plaintiff appeared without an attorney, and after being informed that he would be able to receive legal representation at no charge, he was offered the opportunity to adjourn the hearing in order to find an attorney. *Id*. 277-79. Plaintiff decided to proceed *pro se*. *Id*. at 279.

While appearing in front of the ALJ, Plaintiff detailed his history of poor vision, including the steps Plaintiff has taken to have his vision treated or corrected. *Id*. at 281-82, 285-87. In addition, Plaintiff discussed his high school education, his driver's license, and his work as a

minister. *Id.* at 280-85. The ALJ indicated that he had ample medical evidence in the file which he would review before rendering his decision. *Id.* at 287.

In determining whether the Plaintiff was disabled before his 22nd birthday on April 8, 1990, the ALJ considered medical evidence in the record dating back to January 10, 1989, in addition to evidence from June 2004. *Id.* at 170-71, 271. Moreover, the ALJ had medical evidence from Plaintiff's previous ALJ hearing in 1998 for SSI benefits, which included testimony from an impartial medical expert. In a decision dated April 28, 2009, the ALJ found that Plaintiff was not disabled prior to his 22nd birthday in 1990 because he was able to perform his past relevant work as a laborer. *Id.* at 9-16. On August 26, 2009, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 5-8.[1]

Plaintiff seeks review of the Commissioner's determination, arguing that: (1) the ALJ did not elicit an informed waiver of representation; (2) notwithstanding the particular circumstances of this case, the Social Security Rulings ("SSR") always require the testimony of a medical expert to determine the onset date of a slowly progressing disability; and (3) the ALJ did not comply with the Commissioner's rulings with regard to past relevant work.

## II.     THE DISABILITY STANDARD AND THE DECISION OF THE ALJ

### A.     The Statutory Standard for Finding a Disability

An individual may be entitled to Social Security Benefits upon a finding of disability by demonstrating that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] Although Plaintiff devotes a substantial portion of his brief to detailing the lengthy history between himself and Social Security Administration, this Court reviews only the Commissioner's determination regarding Plaintiff's entitlement to ACB.

-3-

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A disabling impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D). An individual will be deemed to be disabled only if the impairment is so severe that he or she is not only unable to do her previous work, but cannot considering his or her "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner uses the following five-step analysis to determine whether an individual is disabled:

Step One: Substantial Gainful Activity. The Commissioner first considers whether the individual is presently engaged in substantial gainful activity. If so, the individual will be found not disabled without consideration of his or her medical condition. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

Step Two: Severe Impairment. If there is no substantial gainful activity, plaintiff must then demonstrate that he or she suffers from a severe impairment or combination of impairments that significantly limits his ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Step 3: Listed Impairment. If plaintiff demonstrates a severe impairment, the Commissioner will then determine whether the impairment is listed in the regulations set forth at 20 C.F.R. Part 404, Subpt. P or is the equivalent of a Listed Impairment. If the individual has such an impairment, the Commissioner will find the individual disabled.

Step 4: Residual Functional Capacity. If the individual does not have a listed impairment, the fourth step is to determine whether, despite his or her impairment, the individual has the residual functional capacity to perform his past relevant work. Residual functional capacity is defined as what the claimant can still do despite his limitations. If he or she does have the capacity to perform past work, the individual will be found not disabled. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

Step 5: Other Work. Finally, if the individual is unable to perform past work, the Commissioner then considers the individual's residual functional capacity, age, education, and past work experience to determine if he or she is able to perform other work functions. If he or she cannot do so, the individual will be found disabled. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof. *Wallace v. Sec'y of Health and Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of persuasion through the first four steps; however, if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the claimant is capable of gainful employment other than his past relevant work and that jobs which the claimant can perform exist in substantial numbers in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If there is a finding of disability or non-disability at any point during the review, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

### B. The ALJ's Decision

The issue before the ALJ was whether Plaintiff had a disability that began before he turned 22. Tr. 12. Applying this five-step analysis, and upon review of the entire record, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since April 6, 1990. *Id.*

14. At step two, the ALJ determined that Plaintiff suffered from a combination of physical impairments considered severe (myopia and astigmatism) prior to attaining age 22. *Id.* However, at step three, the ALJ found that Plaintiff's condition did not meet or equal an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix I of the Social Security regulations. *Id.* At step four, the ALJ determined that, prior to attaining age 22, Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels that did not require very fine vision, prolonged visual work or more than occasional reading. *Id.* at 15. Further, the ALJ determined that Plaintiff was capable of performing his past relevant work as a laborer for a chemical company. *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled at any time prior to April 7, 1990, the day after the alleged onset of the disability and one day prior to his 22nd birthday, and consequently denied his application for benefits. *Id*. at 16.[2]

## III. DISCUSSION

### A. Standard of Review for Disability Benefits

This Court reviews the determination of the Commissioner to assess whether there is substantial evidence supporting the decision. 42 U.S.C. § 405(g); *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *Brown v. Bowen*, 845 F.2d 1211,1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if this Court

---

[2] The ALJ mistakenly stated that April 7, 1990 was the date on which Plaintiff attained 22 years of age. Tr. 16. Plaintiff's 22nd birthday was actually April 8, 1990, and Plaintiff alleges an onset date of April 6, 1990.

might have reasonably made a different finding based on the record. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

> B.      Review of the Commissioner's Decision

Plaintiff challenges the decision of the Commissioner on the grounds that the ALJ's denial of benefits is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred because: (1) he failed to elicit an informed waiver of representation; (2) notwithstanding the particular circumstances of this case, the SSRs require the testimony of a medical expert to determine the onset date of a slowly progressing disability; and (3) he failed to comply with the Commissioner's rulings with regard to past relevant work. The Court will consider each argument in turn.

> 1.      Waiver of the Right to Representation

The ALJ informed Plaintiff that he would be provided additional time if he wished to obtain an attorney and that there were organizations which would represent him free of charge, and Plaintiff subsequently waived his right to representation. "When the claimant has been informed of his right to counsel before an administrative hearing and knowingly waives it, his lack of representation is not, of itself, cause for remand." *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir. 1979). "Lack of counsel is sufficient cause for remand only if supported by a showing of clear prejudice or unfairness at the administrative hearing." *Id.*

Here, the ALJ informed Plaintiff: "if you wanted some time to get an attorney I would give you that time. On the other hand, if you want to proceed today without an attorney, that's fine too." Tr. 277-78. The ALJ also informed Plaintiff that "Legal Services would be available to represent you at no charge, and there are also attorneys, private attorneys, who do this kind of work as well." *Id.* at 278. The ALJ and Plaintiff also discussed a referral notice Plaintiff had for

an attorney, and the ALJ concluded the discussion of Plaintiff's representation by telling Plaintiff to do what made him most comfortable. *Id.* Plaintiff concluded this discussion by stating: "I want to go ahead and proceed." *Id*. at 279. Given the conversation at the beginning of the hearing about whether Plaintiff desired counsel, the Court finds that Plaintiff was adequately informed of his right to counsel and knowingly waived that right.

Even if the ALJ had not obtained an adequate waiver, Plaintiff was not prejudiced by his lack of representation. As stated above, "[l]ack of counsel is sufficient cause for remand only if supported by a showing of clear prejudice or unfairness at the administrative hearing." *Dobrowolsky,* 606 F.2d at 407. In *Dobrowolsky*, the Third Circuit held that plaintiff was prejudiced by lack of counsel because plaintiff unsuccessfully attempted to cross-examine a vocational expert. In addition, the plaintiff in *Dobrowolsky* failed to present evidence which he had in his possession that detailed a prior hospitalization for chest pain. This evidence may have placed plaintiff within one of the *per se* qualifications for disability. The Third Circuit found that this possibility "undoubtedly would have been pursued" if Dobrowolsky had been represented by counsel. *Id.* at 408.

Here, Plaintiff argues that he was prejudiced by his lack of counsel because the ALJ did not sufficiently develop the record with respect to the period prior to 1990. The ALJ, however, is not required to make further attempts to obtain records which were unavailable ten years earlier. 20 C.F.R. § 404.1512(e) ("We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings."). When Plaintiff filed for SSI in March 1998, he reported being treated by three different doctors prior to 1990: Dr. Marvin Kraushauer, Dr. Daniel Berg, and Dr. Thomas Materna. Tr. 124. Dr. Materna's office indicated on December 28, 1998 that there are "no

-8-

records available regarding" Plaintiff. Tr. 147. Moreover, no records were forthcoming from Dr. Kraushauer. Tr. 145, 147. A request was also made for records from Dr. Berg on November 2, 1998. Tr. 168. Given that the records were already unavailable almost ten years prior to the hearing, the ALJ was not required to seek additional evidence or clarification. Additionally, the ALJ did have access to medical evidence from October 18, 1988. Tr. 14.

Plaintiff made a knowing waiver of his right to counsel at the outset of the proceedings after discussing the right to counsel with the ALJ, and Plaintiff was not prejudiced by his lack of counsel.

### 2. Requirement of a Medical Expert

Plaintiff argues that Third Circuit precedent requires that an ALJ must call on the services of a medical advisor when he or she must infer the onset of a slowly progressing impairment.[3] In *Jakubowski v. Comm'r of Soc. Sec.*, the Third Circuit distinguished the cases cited by Plaintiff when it held that an ALJ is not required to seek out medical expert testimony when he or she is in possession of adequate medical records. 215 Fed. App'x 104, 107-8 (3d Cir. 2007).

On January 10, 1989, Dr. DeLuca found that Plaintiff had corrected vision of 20/70 in his right eye and 20/50 in his left eye. Tr. 170, 171. On June 23, 2004, Dr. Spitz provided an opinion regarding the onset of Plaintiff's visual disability. *Id*. at 271. Dr. Spitz reviewed Dr. DeLuca's January 10, 1989, report and further noted the normal visual field testing from June, 17, 1988. *Id*. at 271. Dr. Spitz then concluded that March 6, 1998 was a reasonable estimate of the onset of

---

[3] Plaintiff cites two cases: *Walton v. Halter,* 243 F.3d 703 (3d Cir. 2001) and *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541 (3d Cir. 2003). In *Walton*, the Third Circuit held that "SSR 83-20 calls for an ALJ to have the benefit of expert medical advice" when the claimant is unable to produce medical records from the relevant time period. 243 F.3d at 710. In *Newell*, the applicant had almost no medical records from the period in question because she could not afford medical treatment, and the Third Circuit therefore held that the ALJ erred in not enlisting a medical expert to assist him in determining the onset date.

Plaintiff's visual disability. *Id*. at 271. Furthermore, based on the opinion of Dr. Herbert Hein, an impartial medical expert, ALJ Robert J. Lazarus, in his decision on Plaintiff's 1998 application for SSI benefits, determined a disability onset date of March 6, 1998. *Id.* at 31-34.

According to SSR 83-20, in disabilities of non-traumatic origin, the determination of onset date involves consideration of the applicant's allegations, work history, and the medical and other evidence of impairment severity. 1983 Lexis 25, at *2. Here, in addition to the aforementioned medical evidence, there is other evidence supporting the ALJ's decision that Plaintiff's disability did not begin prior to his 22nd birthday in 1990. First, Plaintiff himself initially alleged an onset date of January 1, 1997 when he filed his first SSI application in 1998. Tr. 123. Plaintiff indicated that he received no special accommodations in high school. *Id.* at 283. Plaintiff now alleges that he was disabled two days prior to his 22nd birthday, but offers no evidence, medical or otherwise, to support such a position. The ALJ told Plaintiff that he had all of this information in his file during the hearing. *See id.* at 287 ("I have all the… I have those medicals here."). The ALJ was in possession of adequate medical records dating back to 1989, in addition to other corroborating evidence, and therefore did not need to solicit the input of a medical expert to infer the onset date of the claimant's disability.

### 3. Past Relevant Work

Plaintiff argues that the ALJ improperly determined that Plaintiff was able to perform past relevant work. In considering whether a claimant has the residual functional capacity to perform past relevant work, the ALJ must "compare [his] assessment of [claimant's] residual functional capacity with the physical and mental demands of [claimant's] past relevant work. 20 C.F.R. § 404.1560(b). SSR 82-62, which is intended to "state the policy and explain the procedures for determining a disability claimant's capacity to do past relevant work," indicates that "the decision

as to whether the claimant retains the functional capacity to perform past work…*must be developed and explained fully* in the disability decision." SSR 82-62, 1975-1982 Soc. Sec. Rep. Serv. 809, 1982 WL 31386 (S.S.A.) (emphasis added); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112 (3d Cir. 2000) (the ALJ must: (1) "make specific findings of fact as to the claimant's residual functional capacity;" (2) . . . make findings of the physical and mental demands of the claimant's past relevant work; and (3) . . . must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work."). The past work experience "must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." SSR 82-62. Moreover, a "careful appraisal" of the individual's statements regarding past work requirements, medical evidence, and in some cases, supplementary or corroborative information is required. *Id.*

Here, the ALJ found that "[p]rior to attaining the age 22, the claimant was capable of performing past relevant work as a laborer for a chemical company." Tr. 15. The ALJ explained that Plaintiff "performed this work in 1989, earning a total of $9,257.75" and the work performed by the Plaintiff "did not require the performance of work-related activities precluded by the claimant's residual functional capacity," which was defined earlier in the decision as "the residual functional capacity to perform a full range of work at all exertional levels that did not require very fine vision, prolonged visual work or more than occasional reading." *Id.*

It is not clear on which evidence the ALJ relied in reaching this conclusion. While the record does indicate that Plaintiff worked as a laborer for a chemical company, it does not indicate that he performed this work in 1989 or any time before attaining the age of 22. For example, in the November 15, 1999 decision regarding Plaintiff's SSI benefits, ALJ Lazarus

noted that Plaintiff had a "very brief history as a laborer and warehouse person," but did not state the time period. Tr. 32. ALJ Lazarus also wrote that "although [Plaintiff] has worked; it has been sparse, and he was not allowed to operate heavy machinery." There is a copy of a one-page form in the record that asks for the claimant's work background; however nothing is filled in. Tr. 90.

Moreover, in a "Disability Report" that was filled out on March 6, 1998, Plaintiff wrote that he had "worked at a chemical company" and was unable to "operate any machinery due to my poor vision. Tr. 123. In this report, Plaintiff lists two former jobs: "Warehouse Worker," beginning and ending in 1994; and "Laborer" for a "Chemical" business, beginning and ending in 1991 (not 1989). *Id.* at 127. In response to a prompt asking for a description of basic duties, Plaintiff wrote that he "was not allowed to operate any machinery due to [his] poor vision." *Id.* In addition, Plaintiff specified that his physical activities included "boxes of food carried from warehouse to truck – carried to truck a few feet." *Id.* at 128. In a "Development Summary Worksheet" which was filled out on February 17, 1999 by "M.A. Graulau," the "past jobs" of the Plaintiff are listed as "Warehouse worker in 1994" and "Laborer in 1991." Tr. 138. There is no other mention of any work experience in the record.

The ALJ relied on work performed by Plaintiff in 1989 for which there is no support in the record and the Court finds no evidence in the record supporting the ALJ's finding that prior to reaching age 22 Plaintiff was capable of performing past relevant work. Therefore, the ALJ's decision is not supported by substantial evidence and this case will be remanded. On remand, the ALJ should reconsider his decision at Step 4 and, if he reaches the same conclusion, he should clearly articulate the record evidence on which he relies. If more evidence is needed, the ALJ may call upon the Plaintiff for more testimony, as the only work experience discussed at the original hearing was the volunteer work Plaintiff currently does as an associate minister for his

church. In addition, the ALJ "may use the services of vocational experts or vocational specialists, or other resources such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements" if it would be helpful in determining Plaintiff's past relevant work experience. 20 C.F.R. § 404.1560.

### IV.     CONCLUSION & ORDER

For the reasons set forth above, and after careful review of the record in its entirety;

**IT IS** on this 14th day of March, 2012,

**ORDERED** that this case is **REMANDED** for further review at Step Four in accordance with this Opinion; and

**IT IS FURTHER ORDERED** that this case is **CLOSED**.

/s/ Faith S. Hochberg
Hon. Faith S. Hochberg, U.S.D.J.